## JERSEY NURSES ECONOMIC SECURITY ORGANIZATION, Plaintiff–Appellee,

v.

## ROXBURY MEDICAL GROUP, Defendant–Appellant.

No. 88–5636.

United States Court of Appeals, Third Circuit.

Argued Jan. 24, 1989.

Decided Feb. 17, 1989.

Harry N. Turk, Thomas R. Kelly (argued), Epstein Becker & Green, P.C., New York City, for defendant-appellant.

Kenneth I. Nowak, Paul L. Kleinbaum (argued), Zazzali, Zazzali, Fagella & Nowak, Newark, N.J., for plaintiff-appellee.

Before GIBBONS, Chief Judge, SEITZ and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Roxbury Medical Group, an employer, appeals from an order of the district court enforcing an arbitration award. The award was made in an arbitration conducted pursuant to an arbitration clause in a collective bargaining agreement between the employer and Jersey Nurses Economic Security Organization, a labor union. We conclude that the arbitration award does not draw its essence from the terms of the collective bargaining agreement because the arbitrator undertook interest arbitration when the agreement confined him to rights arbitration. Thus we will reverse the order enforcing the arbitration award.

The grievance and arbitration clause is in article XIX of the collective bargaining agreement. In relevant part it provides:

A. A grievance shall be defined as a dispute or complaint arising out of the interpretation, application, performance or alleged breach of this agreement, or any claim to rights accrued during the term of this Agreement, except as expressly excluded from the provisions of this Article.

B. The Arbitrator shall have jurisdiction only over disputes arising out of a grievance, as defined in Section A, above,

and shall have no power to add to, subtract from, or modify in any way the terms of this Agreement.

The Union filed a grievance, and a demand for arbitration, on the questions:

Whether the Employer violated Article VIII, A of the contract by determining the benefit categories based upon a calendar year (52 weeks) rather than based upon hours paid? If so, what shall the remedy be?

The provisions of the collective bargaining agreement which give rise to the grievance provide:

ARTICLE VIII—EMPLOYMENT STATUS

A. Employees covered by this Agreement shall be classified in the following categories based on their scheduled work hours per week:

1. Forty (40) or more hours per week.
2. Thirty-five (35)—thirty-nine (39) hours per week.
3. Thirty (30)—thirty-four (34) hours per week.
4. Twenty-five (25)—twenty-nine (29) hours per week.
5. Nineteen (19)—twenty-four (24) hours per week.
6. Thirteen (13)—eighteen (18) hours per week.

Categories shall be determined on or about January 1 annually based on hours paid, excluding overtime hours, in the previous calendar year, except where there is a mutually agreed upon documented change in the work schedule resulting in a change in category.

\* \* \* \* \* \*

ARTICLE XI—ORIENTATION

D. When an employee is notified that her scheduled work-time is cancelled due to physician unavailability, the employee may:

1) utilize her cancelled time in orientation to another area/specialty in which she is not yet qualified at her regular rate of pay;

2) work the cancelled time in another area/specialty in which she is qualified at her regular rate of pay;

3) take the cancelled time off by using accrued paid time; or

4) take the cancelled time off without pay.

What appears to be in dispute is whether, "hours paid" for purposes of calculating benefits should include the nurses' hours scheduled but not worked, when an assigned physician at the employer's health facility cancels for personal reasons, and the scheduled nurse does not work and is not paid.

Initially the arbitrator made these determinations:

1) the language [of the collective bargaining agreement] is unclear;

2) the parol evidence offered indicated only that the Nurses desired a change which would reflect categories being determined by hours paid;

3) the contract itself gives no indication that the hours paid ought to be divided by 12 months thus leaving the Employer's calculations in error;

4) since the Contract is the first between the parties, even a past practice as a guide for resolution is inappropriate.

Thus the arbitrator did not determine the rights of the parties under the agreement with respect to the disputed question. Rather he appears to have concluded that he could not determine those rights.

Instead, the arbitrator asked the parties for clarification of the agreement within thirty days. None was forthcoming. At that point, the arbitrator directed both parties to submit contract language concerning the matter, and indicated that he would select "whichever encompasses the notion of hours paid." Thereafter he ruled:

I find that the language offered by the nurses' association deals with the problem in a more compelling manner. I therefore order the incorporation of the following language to replace language found to be unclear:

CATEGORIES SHALL BE BASED ON THE FOLLOWING FORMULA: HOURS PAID (INCLUDING HOURS SCHEDULED BUT CANCELLED)

52 WEEKS

HOURS PAID SHALL INCLUDE REGULAR HOURS WORKED, OVERTIME HOURS PAID, VACATION, HOLIDAYS, SICK DAYS, AND ALL HOURS FOR WHICH THE EMPLOYEE IS SCHEDULED BUT CANCELLED BY THE DOCTORS, EXCEPT FOR EMERGENCIES.

Thus the arbitrator chose a new contract provision from among competing proposals by the parties, rather than interpreting the existing agreement.

 The course chosen by the arbitrator in resolving the instant grievance would be an appropriate one under some arbitration clauses or submissions. Parties to a collective bargaining agreement or any other contract are free to bargain that matters on which they have not agreed shall be resolved by arbitration. An undertaking that broad is usually referred to as interest arbitration. In this case, however, the grievance/arbitration article in the collective bargaining agreement, on which the arbitrator's authority depends, does not provide for interest arbitration. The arbitrator is expressly prohibited from adding to, subtracting from, or modifying in any way the terms of that agreement. He could do no more than determine what the rights of the parties are under the terms of the agreement as written. The language in the grievance/arbitration article is almost identical with that in the collective bargaining agreement we considered in *Lodge 802, International Brotherhood of Boilermakers v. Pennsylvania Shipbuilding Co.*, 835 F.2d 1045, 1046 (3d Cir.1987). The holding in that case controls, and compels the conclusion that the arbitration award should not have been enforced.

The judgment enforcing the arbitration award must, therefore, be reversed. Our judgment does not, of course, preclude further proceedings before the arbitrator with respect to the underlying grievance.