886 F.2d 46
 132 L.R.R.M. (BNA) 2388, 113 Lab.Cas. P 11,525
 PENNSYLVANIA POWER COMPANY, Appellant,
v.
LOCAL UNION # 272 OF the INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO; the International
Brotherhood of Electrical Workers, AFL-CIO.
 No. 89-3036.
 United States Court of Appeals,
Third Circuit.
 Argued May 23, 1989.
Decided Sept. 22, 1989.
 
 Edward N. Stoner, II (argued), David J. McAllister, Reed Smith Shaw & McClay, Pittsburgh, Pa., Harry A. Flannery, Pennsylvania Power Co., New Castle, Pa., for appellant.
 Marianne Oliver (argued), Pittsburgh, Pa., for appellee.
 Before BECKER, STAPLETON, and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 STAPLETON, Circuit Judge:
 
 
 1
 This appeal from a summary judgment in favor of Local Union No. 272 and the denial of Pennsylvania Power Co.'s cross motion challenges a labor arbitrator's ruling on the arbitrability of a wage rate dispute. We conclude that the arbitrator exceeded the scope of his authority and we will accordingly reverse.
 
 I.
 
 2
 The facts are not in dispute. In April 1986, Pennsylvania Power Corp. (Penn Power) created a new job classification, the "Mechanic-A/Welder," for employees performing welding on pressurized piping systems. Penn Power decided to assign the same wage rate to the new position as the one that applied to the Mechanic-A position. Local Union No. 272 of the International Brotherhood of Electrical Workers (the Union) met with Penn Power and argued that the wage rate for the new position should be upgraded. Penn Power refused.
 
 
 3
 On November 6, 1986, the Union filed a grievance, seeking "proper evaluation and compensation paid" for the new position. App. at 61. Penn Power responded by noting the following:
 
 
 4
 No Contract violation. The job evaluation system is not a part of the Agreement, therefore, the grievance is not arbitrable.
 
 
 5
 App. at 61.
 
 
 6
 The Union then requested Penn Power to furnish it with certain materials used by Penn Power in arriving at its wage rate decision, but Penn Power refused, claiming confidentiality. After the Union filed a complaint with the NLRB and a hearing was scheduled, Penn Power agreed to submit to arbitration both the issue of whether the grievance regarding the wage rate was arbitrable and, if that issue should be determined against Penn Power, the merits of the grievance.
 
 
 7
 The arbitrator held a hearing on the issue of arbitrability and, in January 1988, he concluded that the grievance was arbitrable. In May 1988, the arbitrator ruled on the merits, concluding that the position of Mechanic-A/Welder should be upgraded from the wage rate assigned it by the Company.
 
 
 8
 Penn Power sought an order vacating the arbitrator's award in the United States District Court for the Western District of Pennsylvania. On cross motions for summary judgment, the District Court affirmed the arbitrator's award, granting the Union's motion and denying that of Penn Power.
 
 II.
 A.
 
 9
 Our review of the district court's grant and denial of the summary judgment motions is plenary. In considering the propriety of the arbitrator's decision on arbitrability, however, our review is subject to the same highly deferential standard we employ in reviewing arbitrators' rulings on the merits. We will not vacate an arbitrator's arbitrability decision unless it cannot rationally be derived from the collective bargaining agreement. See United Steelworkers v. American Smelting, Etc., 648 F.2d 863, 867 (3d Cir.1981). As with arbitrators' decisions on the merits, a decision on arbitrability will be affirmed as long as it "draws its essence" from the collective bargaining agreement. Where, however, an arbitrator substitutes his notions of industrial justice for the terms of the parties' agreement, he exceeds his authority. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 
 10
 The collective bargaining agreement at issue here has two features relevant to this appeal. Article 17 provides that, when the "company makes a substantial change in the duties and responsibilities of any job classification or establishes a new job classification, the Company ... will meet with the Union to discuss the description and negotiate regarding the proper wage rate." App. at 47-48. The agreement does not articulate what measures should be taken by the parties if the negotiations do not lead to agreement.
 
 
 11
 Article 8, section 2(d) contains the second salient feature. It provides that "[t]he arbitrator shall have no power to change, add to, or subtract from any of the provisions of this Agreement. His function shall be limited to the interpretation and application of this Agreement as written." App. at 27.
 
 
 12
 This court has twice been called upon to examine the legal effect of language like that found in Article 8, section 2(d). We have concluded that such clauses limit the scope of arbitrable issues to those "involving the interpretation or application of terms and conditions of employment that the parties have themselves agreed to in their contract." Lodge 802, Etc. v. Pennsylvania Shipbuilding Co., 835 F.2d 1045, 1047 (3d Cir.1987); Jersey Nurses Economic Security Org. v. Roxbury Medical Group, 868 F.2d 88, 90 (3d Cir.1989). We have distinguished such "rights" arbitration from "interest" arbitration, where the parties have agreed to allow the arbitrator to set new terms and conditions of employment that are not contained in the collective bargaining agreement. When the parties have agreed to "rights" rather than to "interest" arbitration, the arbitrator exceeds her authority if she deems arbitrable those issues whose resolution calls for the addition of new terms or conditions to the agreement. See Lodge 802, 835 F.2d at 1047; Jersey Nurses, 868 F.2d at 90.
 
 
 13
 The arbitrator's January ruling on the arbitrability of the proper wage rate for the Mechanic-A/Welder position ignored Article 8, p 2(d). Moreover, the arbitrator failed to examine the fundamental question whether the parties' agreement evinced an intent to arbitrate disputes over job classifications. Indeed, the arbitrator wholly eschewed reliance on the language of the parties' agreement in arriving at his decision. Instead, he based his decision on the following observations:
 
 
 14
 If disputes over the "proper wage rate" ... cannot be settled by agreement of the Parties, how will they be settled? The only other alternative is to leave them for negotiations over a new Agreement, which could result in a strike, costly to all concerned and specified ... to be avoided by the grievance procedure, with possible binding arbitration.
 
 
 15
 App. at 67.
 
 
 16
 In his May 1988 ruling on the merits, the arbitrator commented further regarding his earlier decision in finding the grievance arbitrable. The arbitrator acknowledged that the agreement did not "specify the procedure to be followed if the parties cannot reach agreement on the proper classification and wage rate ...," App. at 72, but he nonetheless concluded that the duty to negotiate included the duty to arbitrate when no agreement could be reached at such negotiations: "If [the company] wishes to keep intact its present system of job evaluation to determine Salary Grades which are fair both to employees in the disputed job and in all other established jobs, it must allow [arbitration] as the reasonable and proper interpretation and application of the expression 'negotiating the proper wage rate' (Article 17, section 2)." App. at 76 (emphasis in original). The arbitrator again ignored article 8, section 2(d).
 
 
 17
 The collective bargaining agreement contains no wage rate for the Mechanic-A/Welder position. In seeking an arbitrator's ruling as to the appropriate wage rate for that position, the union accordingly sought "to have the arbitrator create new terms for the parties," Lodge 802, 835 F.2d at 1047. Because of Article 8, section 2(d), however, the arbitrator did not have that power. It follows that in ignoring Article 8, section 2(d) and finding arbitrability, the arbitrator exceeded his authority.
 
 
 18
 Nothing in the arbitrator's two rulings convinces us to the contrary. The January 1988 ruling was not based on language in the parties' agreement. Rather, the arbitrator chose to ignore Article 8, section 2(d) and base his decision on the general desirability of arbitration. Since arbitration is a creature of contract, such a reliance was misplaced. In so relying, the arbitrator substituted his own notions of industrial justice for the parties' agreement.
 
 
 19
 The arbitrator's May 1988 revision of his rationale supporting his arbitrability finding is similarly untenable. Here, the arbitrator appeared to recognize that some reliance upon language in the agreement might be desirable. He accordingly focused on the word "negotiate," concluding that a requirement to negotiate must also mean a requirement to submit to arbitration deadlocks arising out of those negotiations.
 
 
 20
 In light of Article 8, Section 2(d), this conclusion seems particularly incongruous. The arbitrator did not consider what the parties may have meant by the word "negotiate" in light of the other terms of their agreement; rather, he decided that arbitration would be a "fair" thing for the parties in this context, and then asserted that because fairness required it, "negotiate" must mean "arbitrate disputed issues subject to negotiation." Were we to uphold such a syllogism in this case, limits on arbitrability in a collective bargaining agreement such as that found at Article 8, section 2(d) would have no effect: An arbitrator could choose any term in the parties' agreement and declare that "fairness" or the general desirability of arbitration required an "interpretation" of that term favoring arbitration.B.
 
 
 21
 The Union argues that, since Penn Power chose to submit the arbitrability issue to the arbitrator, and neglected to seek a court order staying arbitration, Penn Power "should not be permitted the luxury," Br. of Appellee at 12, of seeking court review of that decision. Thus the Union appears to argue that Penn Power has waived its right to have the district court determine the question of arbitrability.
 
 
 22
 This court has held that where a party voluntarily submits an issue to arbitration without challenging the arbitrability of that issue, and where the merits are ruled on by the arbitrator, that party may be deemed to have waived his right to judicial review of the arbitrability issue. See Teamsters Local Union v. J.H. Merritt & Co., 770 F.2d 40, 42, 43 (3d Cir.1985). We have always required, however, that the party submitting to arbitration "clearly indicate[ ] his willingness to forego judicial review" for waiver to be established. Local 719, American Bakery & Confectionary Workers of America v. National Biscuit Co., 378 F.2d 918, 921-22 (3d Cir.1967). Where a party objects to the arbitrability of an issue but nonetheless voluntarily submits the arbitrability issue to arbitration, waiver will not be inferred. See Local 719, 378 F.2d at 921-22; Wilkes-Barre Publishing Co. v. Newspaper Guild of Wilkes-Barre, Local 120, 647 F.2d 372, 382 (3d Cir.1981) (preservation of jurisdictional objections before arbitrator permissible); International Bhd. of Teamsters, etc. v. Western Penn. Motor Carriers Assoc., 574 F.2d 783, 786 n. 1a (3d Cir.1978) (where party disputes jurisdiction, arguing merits before Board does not constitute waiver of jurisdictional objections).
 
 
 23
 In this case, Penn Power has repeatedly objected to the arbitrability of the wage rate for the Mechanic-A/Welder. Indeed, Penn Power stated that assertion in its answer to the Union's original grievance claim filed in November 1986. Penn Power has consistently maintained this position, before the arbitrator, the district court, and now on appeal. Accordingly, the fact that it argued the merits before the arbitrator will not be construed as a waiver of its right to judicial review on the arbitrability issue.
 
 III.
 
 24
 For the foregoing reasons, the judgment of the district court will be reversed and the case will be remanded to the district court with an instruction that it enter summary judgment in favor of Penn Power.