**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1439 & 19-1440
_____

PROSPECT CCMC LLC, doing business as Crozer-Chester Medical Center,
Appellant
v.
CROZER-CHESTER NURSES ASSOCIATION/PENNSYLVANIA ASSOCIATION
OF STAFF NURSES AND ALLIED PROFESSIONALS

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Nos. 2-18-mc-00174, 2-18-cv-04039)
District Judge:  Honorable Gerald A. McHugh

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 31, 2019

Before:  HARDIMAN, PHIPPS, and NYGAARD, *Circuit Judges*.

(Opinion filed: February 26, 2020)

_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

This dispute involves accrued vacation time for unionized nurses following a change in ownership at a hospital in Pennsylvania. The nurses' new employer assumed a collective bargaining agreement that the prior employer had negotiated with the union. Under that agreement, the prior employer permitted the nurses to maintain whatever level of vacation time they had previously accrued. But based on its reading of the agreement, the new employer refused to allow nurses to maintain over 200% of their annual limit of vacation time. That prompted the nurses' union to file a grievance, and the dispute went to arbitration. The arbitrator decided in favor of the nurses' ability to maintain the full amounts of their previously accrued vacation time. Both the new employer and the nurses' union sought redress in the District Court, which sustained the arbitrator's award. The new employer appealed, and for the reasons below, we will affirm the judgment of the District Court.

I

Before it was acquired, Crozer-Keystone Medical Center employed nurses under the terms of a collective bargaining agreement, or a CBA for short. After a year of negotiations, Crozer-Keystone, in 2015, agreed to a new CBA with the union, the CCNA/Pennsylvania Association of Staff Nurses and Allied Professionals. That CBA imposed, for the first time, a limit on the nurses' accumulation of vacation time:

> Effective July 1, 2015 no employees may accumulate more than two times (i.e. 200%) of their annual entitlement.

CBA, art. 9, § 1.c. As implemented by Crozer-Keystone, nurses who had not yet exceeded that ceiling could not later do so, but nurses who had previously accumulated vacation time

2

over the new 200% cap could keep the excess. Those nurses' ability to maintain previously accrued above-the-cap vacation time was short-lived.

In 2016, a hospital system, Prospect CCMC LLC, acquired Crozer-Keystone through an asset purchase agreement. In conjunction with selling its assets, Crozer-Keystone terminated the nurses, but Prospect offered to rehire them before assuming operations of the hospital. After negotiating the transition, Prospect and the union entered into a recognition agreement on June 16, 2016. That agreement adopted every term of the prior CBA, except one related to health insurance. In assuming operations of the hospital on July 1, 2016, Prospect relied on the CBA's cap on the accumulation of vacation time to reduce any previously accumulated over-the-limit vacation time to 200% of the annual entitlement. That reduction caused the union to file a grievance.

That dispute went to arbitration. The sole question before the arbitrator related to the loss of over-the-cap accrued vacation time:

> Did Prospect, as a successor to Crozer-Keystone, violate its obligations under the collective bargaining agreement to maintain vacation banks for employees who on the date of acquisition had greater than the contractual maximum accrual[?]

The arbitrator determined that the CBA did not curtail the nurses' unfettered right to the full amount of their previously accumulated leave – even amounts in excess of the 200% cap. And because Prospect assumed the CBA, the arbitrator ruled that Prospect was obligated to honor the excess accumulated leave.

The arbitrator's determination did not end the dispute. Both Prospect and the union commenced actions in the District Court. The union sought to enforce the award under the Labor-Management Relations Act, 29 U.S.C. § 185(a). In its separate suit, Prospect sought

3

to vacate the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10. With jurisdiction over those cases, *see* 28 U.S.C. § 1331; *see also* 29 U.S.C. § 185(c); 9 U.S.C. § 10, the District Court consolidated the litigation, denied Prospect's motion to vacate, and granted the union's motion for judgment on the pleadings. Prospect timely appealed, and those orders upholding the arbitration award are now properly before this Court. *See* 28 U.S.C. § 1291; *see also* 9 U.S.C. § 16.

## II

The parties first disagree about which law governs Prospect's attempt to vacate the arbitration award. The union argues that the Labor-Management Relations Act applies because the dispute is over a labor arbitration. But Prospect contends that the Federal Arbitration Act governs its attempt to vacate an arbitrator's award. That disagreement bears on a threshold issue: whether Prospect timely filed suit to dispute the arbitrator's award.

Prospect sued within three months of the arbitrator's determination. That would be timely for a challenge to an arbitration award under the Federal Arbitration Act, which has a three-month statute of limitations. *See* 9 U.S.C. § 12. But it would be untimely under the Labor-Management Relations Act. That Act incorporates the state-law statute of limitations for challenging an arbitration award. *See Serv. Empl. Int'l Union, Local No. 36 v. Office Ctr. Servs., Inc.*, 670 F.2d 404, 409-10 (3d Cir. 1982). And in Pennsylvania that period is 30 days. *See* 42 Pa. Cons. Stat. Ann. § 7314(b). The timeliness of Prospect's suit, therefore, depends on whether Prospect could proceed under the Federal Arbitration Act.

Prospect could do so, and its suit was timely. The Federal Arbitration Act applies to collective bargaining agreements, except those covering employees engaged directly in

the channels of commerce. *See Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am., (U.E.) Local 437*, 207 F.2d 450, 453 (3d Cir. 1953) (en banc) (interpreting 9 U.S.C. § 1); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001) (holding that only contracts of employment of transportation workers are exempted from the Federal Arbitration Act). Prospect challenges an arbitration award under the CBA, and the exception does not apply here because the unionized nurses are not engaged directly in the channels of commerce. Accordingly, Prospect had three months to file suit, and it did so within that time.

III

Proceeding under the Federal Arbitration Act, Prospect argues the arbitrator committed three errors that warrant vacating the award. But overturning an arbitrator's award is no small feat. The Federal Arbitration Act imposes a strong presumption in favor of enforcing arbitration awards. *See Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016). After all, the parties bargained for an arbitrator to resolve their dispute – not a court. *See Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) ("[I]t is assumed that the parties bargained for a grievance resolution procedure in which an arbitrator would interpret the agreement."). Thus, arbitration awards are reviewed under an "extremely deferential standard," with the usual outcome being to "affirm easily." *Hamilton Park*, 817 F.3d at 861 (quoting *Dluhos v. Strasberg*, 321 F.3d 365, 370 (3d Cir. 2003)). Prospect nonetheless seeks to vacate the award on the grounds that it was in excess of the arbitrator's powers in two respects, *see* 9 U.S.C. § 10(a)(4), and that the arbitrator was "guilty of

5

misconduct in . . . refusing to hear evidence pertinent and material to the controversy," *id*. § 10(a)(3).

But the high bar for vacating an arbitration award coupled with the standards for appellate review of the District Court's decision – *de novo* for legal conclusions and clear error for factual findings – lead to the rejection of each of Prospect's challenges. *See Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 119 n.23 (3d Cir. 2016).

A

Prospect first contends that by failing to arguably interpret the CBA, the award exceeded the arbitrator's powers. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). The lynchpin of the arbitrator's analysis was that the CBA contains no agreement that the excess vacation bank would be reduced. Without such an agreement in the CBA's text, the arbitrator reasoned that Prospect could not reduce the nurses' over-the-cap leave. From one perspective, it may appear that the arbitrator reached that result not by interpreting the CBA, but rather by drawing an inference from silence in the CBA or even relying on extrinsic evidence. However, under the canon of *expressio unius est exclusio alterius* (the inclusion of one is the exclusion of others), by expressly imposing a cap on the *accumulation* of leave, but not an explicit cap on the *maintenance* of previously accrued excessive leave, the CBA could be read to impose no cap on the maintenance of previously accrued excessive leave. *See NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (defining the canon as "expressing one item of [an] associated group or series excludes another left unmentioned" (alteration in original) (quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002))); *Plumbers & Steamfitters Local No. 150 Pension Fund v. Vertex Constr. Co.*, 932 F.2d 1443, 1449 (11th Cir. 1991) (applying the canon to the

6

interpretation of a CBA). Whether or not that is the best reading of the CBA, it is certainly sufficient to uphold the arbitrator's award.[1]

B

Prospect's next challenge – that the arbitrator manifestly disregarded federal labor law – rests on uncertain legal footing. After the Supreme Court's decision in *Hall Street Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008), it is unclear whether that rationale provides an independent basis for setting aside arbitration awards. *See Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 n.3 (2010); *Whitehead*, 811 F.3d at 120-21. Regardless, Prospect could not prevail on that theory.

Prospect contends that the arbitrator manifestly disregarded principles of labor law relating to successor employers. An asset purchaser is not obligated to hire the seller's employees. *See NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 280 n.5 (1972). Nor does a decision to re-hire the seller's employees necessarily trigger a duty to bargain with respect to the initial terms of re-employment. *See id.* at 294; *see also Coral Harbor Rehab. & Nursing Ctr. v. NLRB*, 945 F.3d 763, 767 (3d Cir. 2019) ("[A] successor employer is ordinarily free to set initial terms on which it will hire the employees of a predecessor.").

---

[1] *See Oxford Health Plans*, 569 U.S. at 568-69 (requiring that an arbitration award be upheld even if it includes "serious errors of law or fact," as long as "the arbitrator (even arguably) interpreted the parties' contract"); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 672 (2010) ("It is only when [an] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." (alterations in original; internal quotations omitted) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam))); *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379-80 (3d Cir. 1995) ("An arbitration award draws its essence from the bargaining agreement if the interpretation can in *any rational way* be derived from the agreement." (internal quotations omitted) (quoting *Tanoma Mining Co. v. Local Union No. 1269, UMWA*, 896 F.2d 745, 748 (3d Cir. 1990))).

7

However, if the asset purchaser makes 'perfectly clear' that it plans to retain all of the unionized employees, then it must bargain to set different initial terms of employment. *See Burns*, 406 U.S. at 294-95.

Prospect accuses the arbitrator of manifestly disregarding principles of successor employment. But the arbitrator did not foreclose the possibility that Prospect, as a successor employer, could have, as an initial condition of employment, capped the nurses' carry-over of vacation time. Rather, the arbitrator found no evidence that Prospect did so in time. As the arbitrator explained, *after* Prospect began negotiating the recognition agreement, it could no longer set initial terms of employment without bargaining. That may well misapprehend the 'perfectly clear' exception, but it is not a manifest disregard for principles of successor employment.[2]

C

As a final effort, Prospect argues that the arbitrator committed misconduct by refusing to hear testimony about an NLRB decision in a different case that approved the reduction of over-the-cap vacation time at another of Prospect's hospitals. But it has long been understood that not "every failure to receive relevant evidence constitutes misconduct." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968). Rather, the refusal must "so affect[] the rights of a party that it may be said that he was deprived of a fair hearing." *Id.* Here, the arbitrator excluded, as irrelevant, proposed testimony about an NLRB decision allowing a different Prospect-

---

[2] *See Brentwood Med. Assocs.*, 396 F.3d at 241 ("It is . . . not the role of a court to correct factual or legal errors made by an arbitrator."); *see also Whitehead*, 811 F.3d at 121 (characterizing the manifest disregard standard as "extremely deferential" and explaining that it "requires more than legal error").

affiliated hospital without a CBA to reduce previously accrued vacation time. That evidentiary ruling is not patently incorrect,[3] and it is certainly not an error that deprived Prospect of a fair hearing. The ruling was far-removed from misconduct.

IV

For the foregoing reasons, we will affirm the District Court's orders declining to vacate the arbitration award and granting judgment on the pleadings in favor of the union.

---

[3] *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (finding that testimony that contained "no factual admissions" but only "interpretation" is a "legal conclusion"); *cf. Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) ("Expert testimony that consists of legal conclusions cannot properly assist the trier of fact . . . .").