NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 22-3239

———————

COMCAST OF NEW JERSEY LLC,

Appellant

v.

IBEW LOCAL UNION NO. 827

———————

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 3-21-cv-17050)
District Judge: Honorable Zahid N. Quraishi

———————

Submitted Under Third Circuit LAR 34.1(a)
on September 28, 2023

Before: KRAUSE, ROTH, and AMBRO, Circuit Judges

(Opinion Filed: January 30, 2024)

———————

OPINION[*]

———————

**AMBRO**, Circuit Judge

---

[*]    This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Comcast of New Jersey, LLC terminated its employee Michael Bernabe, a member of IBEW Local Union No. 827, and a labor arbitrator issued an award reinstating him. Comcast petitioned the District Court to vacate this award, but District Judge Quraishi denied Comcast's petition and granted the Union's cross-motion to confirm the award. Comcast appeals to us. For the reasons that follow, we will affirm the Court's well-reasoned decision.

## I. BACKGROUND

On July 29, 2020, Bernabe, who is White, logged onto a Comcast virtual team meeting during work hours, and multiple employees heard him shout: "Fuck, fuck, motherfucking, n[-word], fuck." App. at 1-2. Several meeting attendees informed Bernabe that he was not on mute, and he quickly disconnected from the call. Shortly after, Bernabe texted his managers, apologizing and saying that he had been singing along to a rap song unaware he was unmuted. His managers nonetheless reported Bernabe's conduct to their manager, and Comcast's Human Resources Department put him on administrative leave while investigating his conduct. Bernabe again claimed that he had been singing along to a song by Tekashi69 and had believed himself to be on mute. He was aware of Comcast's Code of Conduct, which forbids the use of racial slurs. As a result of his use of a racial slur while waiting for the business meeting to begin, Comcast terminated his employment. Bernabe's union later filed a grievance on his behalf challenging the termination. The parties proceeded through each step of the grievance procedure set out in their Collective

Bargaining Agreement ("CBA") and eventually submitted the matter to binding labor arbitration.

On March 31, 2021, the parties appeared before an arbitrator, Melissa H. Biren, for a hearing, and she issued an Award on July 12, 2021. Biren found that "[t]here [wa]s no dispute that Bernabe engaged in the misconduct alleged[,]" and "that the use of such language, in particular the 'N-word' in the workplace, is inappropriate and unacceptable behavior." App. at 41-42. She further found the use of that language to violate Comcast's Code of Conduct and several company policies in its Employee Handbook.

Biren determined that the "critical issue" was what the undefined term "just cause" meant in the parties' CBA; she stated that "just cause principles include the concept of progressive discipline[.]" *Id.* at 43. In addition, "[A]s a general principle, absent egregious misconduct, mitigating factors are properly considered." *Id.* Biren credited testimony from Bernabe's African American brother-in-law, as well as Bernabe himself, that he had indeed been singing along to a rap song that the brother-in-law had shared with him (though Bernabe was mistaken about the artist's identity). Biren also observed that Bernabe had immediately apologized for his conduct and that, in his 28-year personnel record, he had received many customer compliments and positive evaluations with no complaints. The arbitrator concluded that his termination was an "excessive penalty and [] inconsistent with just cause principles on this record." *Id.* at 45. She ordered Comcast to reinstate Bernabe with an unpaid five-day suspension.

Comcast filed a petition in the District Court to vacate the award. It asserted that to enforce the award would violate federal law, state law, and public policy against racial

3

harassment. It also argued that Biren had no authority under the CBA to reinstate Bernabe, as the CBA stated that "termination for cause" was the "sole function of the Company." App. at 15.

On October 31, 2022, the District Court denied Comcast's petition and granted the Union's cross-motion to confirm the award, reasoning that the arbitrator acted within her authority under the CBA to interpret the phrase "for cause" and that her award neither violated public policy against racial harassment nor prevented Comcast from complying with state and federal law. Comcast appeals.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. We have jurisdiction under 28 U.S.C. § 1291.

When reviewing a district court's denial of a motion to vacate an arbitration award, we review the court's legal conclusions *de novo* and its factual findings for clear error. *Whitehead v. Pullman Grp., LLC*, 811 F.3d 116, 119 n.23 (3d Cir. 2016). We give a fresh review of the court's order and apply the same standard it should have applied in reviewing the arbitration award. *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996).

That said, "[t]here is a strong presumption under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, in favor of enforcing arbitration awards." *Brentwood Medical Assoc.*

*v. United Mine Workers*, 396 F.3d 237, 241 (3d Cir. 2005).[1]  Indeed, our standard of review is "extremely deferential."  *Hamilton Park Health Care Ctr.  Ltd.  v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (internal citations and internal quotation marks omitted).   "[W]e do not review [the award] for legal error, but are limited to assessing whether [it] draw[s] its essence from the collective bargaining agreement."  *Exxon Shipping*, 73 F.3d at 1295 (internal citations and quotation marks omitted).  Nor may we "second-guess[ ] the arbitrator's fact-finding, particularly insofar as the conclusion that the asserted public policy would be violated by the employee's reinstatement depends on drawing factual inferences not made by the arbitrator."  *Id*. (internal citations and quotation marks omitted).  "[Its] decision need be neither wise nor internally consistent"; it is "subject to a standard of only minimal rationality."  *Id.* at 1297 (internal citations and internal quotation marks omitted).

## III.    DISCUSSION

Comcast raises three arguments for vacating the award.  None is persuasive.

### A.

Because the CBA states that "termination for cause" is in the "sole function" of the company, Comcast contends the award derives not from the essence of that CBA but from

---

[1] The FAA lists only four grounds for *vacatur*: (1) "where the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrators"; (3) "where the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a).

the arbitrator's own brand of industrial justice. Opening Br. at 47-48. This is unconvincing. "Where an arbitrator injects a restriction into a contract to which the [employer] did not agree and to which the bargaining unit employees are not entitled, [s]he dispenses [her] own brand of industrial justice and [the award] should be overturned." *Monongahela Valley Hosp., Inc. v. United Steel, Paper & Forestry, Rubber, Manufacturing, Allied Industrial & Service Workers Int'l Union AFL-CIO CLC*, 946 F.3d 195, 201 (3d Cir. 2019).

However, that did not occur here. Nothing within the CBA requires termination of Bernabe for his misconduct. Further, nothing within it defines "for cause." The arbitrator interpreted this term in determining sufficient cause for termination was missing. It is well established in our Circuit that an arbitrator may construe a "just cause" provision to include progressive discipline provisions whereby penalties increase upon repeat occurrences, *see, e.g., United Transportation Union Local 1589 v. Suburban Transit Corporation*, 51 F.3d 376 (3d Cir. 1995), and it appears that—at least at the time it submitted the claim to the arbitrator—even Comcast shared that understanding. After all, the arbitral issue to which Comcast stipulated was: "Did the Company, Comcast, Inc., have cause for the discharge of the Grievant, Michael Bernabe? If not, what shall be the remedy?" App. at 35. The award thus derived from the essence of the CBA.[2]

---

[2] That stipulation would waive any defect even if the arbitrator's interpretation were outside the scope of the CBA because the requirement that an award "draw its essence from the terms of the collective bargaining agreement . . . poses no obstacle where the parties agree to go beyond the scope of the CBA." *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 863 (3d Cir. 2016) (internal citations and quotation marks removed).

B.

Comcast also asserts that by requiring it to reinstate an employee who said the "n-word," the District Judge prevents it from complying with state and federal law against racial harassment. Opening Br. at 21, 34. He properly rejected this argument, explaining that Bernabe's one-time utterance of the term, not directed at anyone and when he believed himself to be muted, was precisely "the sort[] of offhanded comment[] and isolated incident[]" that falls short of harassment.[3] App. at 9.

C.

Finally, Comcast argues that *Stroehmann Bakeries v. Local 776*, 969 F.2d 1436 (3d Cir. 1991), requires us to vacate the award under the public policy exception to enforcement of labor arbitral awards. Opening Br. at 31. Again, the District Court properly rejected this argument. A court may vacate an arbitration award "if it violates a 'well-defined and dominant' public policy, which we must 'ascertain[] by reference to the laws and legal precedent and not from general considerations of supposed public interests.'" *Exxon Shipping Co. v. Exxon Seamen's Union*, 993 F.2d 357, 460 (3d Cir. 1993) (quoting *W.R. Grace & Co. v. Local Union 759, Int'l Union of Rubber Workers*, 461 U.S. 757, 766 (1983)). Comcast argues that *Stroehmann Bakeries* obliged the arbitrator to determine "whether Mr. Bernabe's conduct constituted racial harassment, or whether the proposed

---

[3] Even if Bernabe's conduct constituted harassment, the District Court's decision would not stand for "the proposition that [harassment] can be ignored by a labor arbitrator[,]" as Biren did impose discipline on Bernabe. *Stroehmann Bakeries v. Local 776*, 969 F.2d 1436, 1443 (3d Cir. 1991). Rather, the District Court "merely defer[red] to the arbitrator's choice of remedy." *Id.*

remedy would violate a pertinent public policy." Opening Br. 36. Not so. *Stroehmann Bakeries*—which involved a grossly biased arbitrator who made offensive comments regarding the accuser and refused to hear evidence relevant to her claim—merely held that an arbitrator must determine whether the disputed conduct actually occurred. 969 F.2d at 1442. As the District Court properly observed here, "[t]he arbitrator [] did not re-instate Bernabe without making a finding of whether the misconduct occurred. Rather, [she] made the specific finding that Bernabe committed the misconduct and determined that the proper penalty was a five-day suspension without pay." App. at 12. This did not violate public policy.

\*\*\*\*\*

We thus affirm the District Court's order declining to vacate the Award.

8