PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 19-2182

MONONGAHELA VALLEY HOSPITAL
INCORPORATED

v.

UNITED STEEL PAPER AND FORESTRY
RUBBER MANUFACTURING
ALLIED INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION AFL-CIO CLC,

Appellant

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:18-cv-00371)
District Judge: Honorable David S. Cercone

Argued November 13, 2019

Before: AMBRO, KRAUSE, and BIBAS, Circuit Judges

(Opinion filed:  December 30, 2019)

Anthony P. Resnick (Argued)
United Steelworkers International Union
60 Boulevard of the Allies, Room 807
Pittsburgh, PA  15222

      Counsel for Appellant

Hayes C. Stover (Argued)
K&L Gates
210 Sixth Avenue
Pittsburgh, PA  15222

      Counsel for Appellee

---

OPINION  OF  THE  COURT

---

AMBRO, <u>Circuit Judge</u>

We have the rare situation where not even our heavy degree of deference to arbitrators can save an arbitration decision and award.  Monongahela Valley Hospital, Inc. sought to vacate an arbitration decision and award in favor of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.  The District Court granted the Hospital's motion for summary judgment and vacated the award.  The Union now appeals, arguing that the District Court erred by exceeding its very limited scope of review and should

2

have confirmed the award because it rationally derived from the parties' collective bargaining agreement (the "CBA"). We agree with our District Court colleague, and thus we will affirm.

## I.    BACKGROUND

The Hospital has approximately 1,100 employees, just under half of whom are in a bargaining unit represented by the Union. Working supervisors are not included in the bargaining unit. The CBA, in effect from July 1, 2014 to June 30, 2017 (thus at all times relevant to this dispute), governed the relationship between the Hospital and the bargaining unit employees. It included a dispute resolution process whereby an aggrieved employee could submit a grievance that if unresolved through the grievance procedure, could be appealed to arbitration.

Under § 8(F)(3) of the CBA, an arbitrator's authority is limited "only to interpret[ing], apply[ing] or determin[ing] compliance with [its] provisions." The arbitrator specifically lacks the "authority to add to, detract from or alter in any way the provisions of this [CBA]." *Id.*

The CBA provision before us—§ 13(B)(6)—concerns the scheduling of vacation. It provides that

> [v]acation will, **so far as possible**, be granted at times most desired by employees; **but** the **final** right to allow vacation periods, and the right to change vacation periods[,] is **exclusively** reserved to the Hospital. Any changes in vacation schedules may be realized by mutual consent. In the event the

3

Hospital **unilaterally** changes a schedule causing the employee to suffer financial loss, the Hospital agrees to reimburse the employee for provable loss.

(Emphases added.)

Conflicts over vacation scheduling occurred only when there was a limited number of bargaining and non-bargaining unit employees that performed the same or similar functions such that only one employee could be away at a time. There were only three instances in the record before late 2016 when a bargaining unit employee did not receive her desired vacation because a supervisor (not a bargaining unit member) chose the same days (and in one of those instances the issue went away).

To avoid vacation scheduling conflicts, the Hospital, in apparent agreement with the Union, experimented with using "blackout" periods for scheduling 2017 vacation whereby certain weeks were blocked off for vacation. The Hospital, however, found that the experiment was unsuccessful in eliminating scheduling conflicts and discontinued it after that year.

Our case stems from a dispute over vacation days between bargaining unit employee Carol Konsugar and her working supervisor, a non-bargaining unit employee. At the end of 2016, Ms. Konsugar requested vacation for the following year during the week of December 25, 2017. The Hospital denied her request because her working supervisor had requested that same week off and both could not be away

4

at the same time.[1]  Ms. Konsugar then filed a grievance in January 2017 alleging the denial of her requested vacation as a CBA violation, and arbitration ensued.[2]

The parties selected Gerald Kobell as the arbitrator.  The Union argued before him that § 13(B)(6) of the CBA gave its employees preference when there were conflicting vacation requests, while the Hospital contended the "final" and "exclusive" language in that section conferred on it ultimate discretion over vacation scheduling.  In an attempt to reconcile the competing positions, the arbitrator framed the issue as "whether the Hospital violated the [CBA] when it denied

---

[1] The record is not clear whether Ms. Konsugar's requested week of December 25, 2017, was "blacked out."  The arbitrator, based on Union Exhibits 5 and 6, stated only that the week of December 18, 2016, was blacked out.  It appears the "2016" was a scrivener's error considering that the arbitrator later refers to those same exhibits as blacking out vacation for *2017*, *see* App. 46; 48.  In any event, the Hospital represented at oral argument, and the Union did not dispute, that Ms. Konsugar was unaffected by the "blackout" policy, *See* Trans. of Oral Arg. at 18–19, 23–24.  We therefore proceed on the assumption that Ms. Konsugar's request for vacation during the week of December 25, 2017, did not involve a "blackout period."  To the extent the arbitrator ruled that the Hospital may no longer use "blackout" periods, we need not weigh in on this point.

[2] The grievance referenced specifically only Ms. Konsugar's violation.  Two other disputes over vacation scheduling allegedly arose during 2017, yet they were not squarely before the arbitrator, and we do not address them here.

5

employee Carol Konsugar the vacation she desired [for 2017] in December 2016."

In interpreting § 13(B)(6), the arbitrator stated he could not "conclude that the subsequent reservation of exclusivity in allocating vacations entirely to the Hospital completely negates . . . 'so far as possible'" because of his concern that it could then always deny bargaining unit employees their vacation requests. Accordingly, the arbitrator sustained the grievance, ruling that, "notwithstanding the Hospital's reservation of exclusive rights contained in Section 13[B](6) of the Agreement," the CBA precluded the Hospital from using "blackout" periods and prevented it from "deny[ing] senior employees in the bargaining unit their desired vacation[] when there is no operating need."

The Hospital filed a complaint with the United States District Court for the Western District of Pennsylvania under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, seeking to vacate the award on the grounds that "[t]he arbitrator's decision and award exceeded his authority, ignored the plain language of the CBA, and . . . failed to draw its essence from the language of the CBA." Both parties moved for summary judgment. The District Court, after acknowledging that it owed a "heavy degree of deference to the arbitrator," ruled nonetheless that the arbitrator's interpretation of § 13(B)(6) "(1) was a manifest disregard of the plain language of the CBA[,] (2) ignored the clear intentions of the parties[,] and (3) failed to construe such provision to give effect to all parts of the provision." Accordingly, it granted the Hospital's motion for summary judgment and vacated the arbitration award. The Union appeals to us.

6

## II.     JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction under 29 U.S.C. § 185, and we have appellate jurisdiction under 28 U.S.C. § 1291.

We exercise plenary review over the District Court's order granting summary judgment and apply the same standard as that Court in reviewing an arbitration award. *Exxon Shipping Co. v. Exxon Seamen's Union*, 73 F.3d 1287, 1291 (3d Cir. 1996). No doubt courts are restricted in reviewing the decision of an arbitrator resolving a labor dispute under a collective bargaining agreement, as "[t]he *sine qua non* of judicial review of an arbitration award is a heavy degree of deference to the arbitrator." *Akers Nat'l Roll Co. v. United Steel*, 712 F.3d 155, 164–65 (3d Cir. 2013).

But that deference is not unlimited. If it were, court review would be an oxymoron. Hence we will not "rubber stamp" an arbitrator's decision. *Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E.*, 817 F.3d 857, 861 (3d Cir. 2016) (quoting *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996)). Rather, we will vacate an award "if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement." *Citgo Asphalt Ref. Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991*, 385 F.3d 809, 816 (3d Cir. 2004) (citation omitted). The Supreme Court has long made clear that an award must still "draw[] its essence" from the words of the collective bargaining agreement and the arbitrator may not "dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). Further, an arbitrator must act within the scope of authority conferred him by the CBA. *See Pa. Power Co. v. Local Union No. 272 of the Int'l Bhd. of Elec. Workers*,

7

276 F.3d 174, 179–80 (3d Cir. 2001) (vacating an award where arbitrator "exceeded his powers" under the CBA).

## III.    DISCUSSION

The Union asks us to reverse the District Court's order and reinstate the arbitration award.  We decline to do so because the award in no rational way draws its essence from the CBA, and the arbitrator, in inserting the "operating need" restriction, exceeded his authority under the CBA by dispensing his own brand of industrial justice.

### A.    The award ignores the CBA's plain language.

We begin with the obvious: an arbitrator "may not ignore the plain language of the contract."  *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).  Here § 13(B)(6) gives the Hospital the "final" and "exclusive[]" right to deny employees their desired vacation.  That it has the authority "unilaterally" to change a vacation schedule, even though schedules may also be changed by "mutual consent," lends further support to this clear reservation of rights.  These terms "are simply not susceptible to more than one reasonable interpretation, and they do not somehow render the CBA[] incomplete or ambiguous." *U.A.W. Local No. 1697 v. Skinner Engine Company*, 188 F.3d 130, 146 (3d Cir. 1999).

The arbitrator ignored this plain language, and he ruled against the Hospital when it "elected to rely upon its reservation of rights" in § 13(B)(6) in denying Ms. Konsugar her requested vacation.  He justified his decision by reasoning that the "so far as possible" language must be given some meaning lest the rights of the bargaining unit employees with respect to vacations "could always be negated."

8

"So far as possible" cannot hold hostage what follows here. It is a subordinate phrase clearly qualified by the superseding "but," and what follows grants the Hospital the "final," "exclusive[]" and "unilateral[]" right to schedule vacations. "It is . . . well established that contract language must be read in context and that 'a subsequent specification impliedly limits the meaning of a preceding generalization.'" *Affiliated Food Distribs., Inc. v. Local Union No. 229*, 483 F.2d 418, 420 (3d Cir. 1973) (citation omitted). Put in context, "so far as possible" means the Hospital should consider in good faith the bargaining unit employees' preferences when exercising its final and exclusive right to determine vacation, but nothing more; and there is certainly no requirement anywhere in the CBA that the Hospital consider operating need.

Thus the Hospital could rely on its reservation of rights to deny a vacation request. Supporting this is that the Union failed to introduce evidence that the Hospital did not "so far as possible" attempt to honor Ms. Konsugar's request. Indeed, in reciting the Hospital's position, the arbitrator stated that Ms. Konsugar was granted her first three requested vacation dates, and the Union failed to rebut that evidence.

Even this is not all that went off the rails. The arbitrator concluded that if a claim to vacation, absent operating need or special circumstances, cannot be resolved, the bargaining unit member's claim prevails. Rather than acknowledge the CBA's rule that the Hospital makes the ultimate determination over vacation scheduling, this decision flips the CBA on its head and grants the Union a near-categorical preference. Accordingly, notwithstanding a standard of review tilted much in favor of arbitrators, we cannot affirm this award that manifestly disregards the plain language of the CBA.

9

**B.     The arbitrator exceeded the scope of his delegated authority when he injected the "operating need" restriction into the CBA.**

Manifestly disregarding the Hospital's "final," "exclusive[]" and "unilateral[]" right to schedule vacations, the arbitrator deviated far beyond the scope of his authority by force-feeding the "operating need" requirement into the CBA.

To repeat, an arbitrator's authority sources from the CBA itself.  Here § 8(F)(3) makes clear that the arbitrator has no authority to "add to, detract from or alter in any way the provisions of [the CBA]."  Yet that is what the arbitrator did in inserting the "operating need" restriction.  It appears nowhere in the CBA.  Instead, the arbitrator urges what he believes "*should* occur in the situation where a bargaining unit employee and his/her working supervisor . . . both desire the identical vacation;" the employee should prevail and "the working supervisor *should not* have a superior claim to the desired vacation week."  (Emphases added.)  Thus, he concludes, "the Hospital may not reserve unto itself and the working supervisor the right to deny senior employees in the bargaining unit their desired vacation, when there is no operating need for the employee to be present during the desired vacation week because of skills, ability, and responsibilities that cannot also be performed by the working supervisor."  None of these policy pronouncements, however, can be found in the text of the CBA.

Why "operating need" is absent stems from the parties' bargaining history.  The 1974 CBA provided that "each employee's vacation period shall be designated by the Hospital to meet the *requirement of operating conditions*" (emphasis added), in effect the "operating need" restriction the arbitrator added here.  In 1977, however, the CBA was modified to eliminate the operating-conditions restriction and to give the

10

final say to the Hospital to schedule vacations. That is the same language that is in the CBA governing this dispute. Moreover, in 2009 the Union sought a specific restriction to the CBA that "[n]on-bargaining unit employees will not be given vacation scheduling preference over bargaining unit employees," but that amendment was rejected and never became a part of the agreement. App. 99, 43.

Thus past becomes prologue in discovering the parties' intent. Where an arbitrator injects a restriction into a contract to which the Hospital did not agree and to which the bargaining unit employees are not entitled, he dispenses his own brand of industrial justice and should be overturned. *See Brentwood Medical Ass'n v. United Mine Workers*, 396 F.3d 237, 241 (3d Cir. 2005) (noting that "it is within our discretion to vacate [an arbitration] award" when it is supported only by language the arbitrator injected into the CBA); *Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, Local 1445*, 314 F.3d 29, 34–37 (1st Cir. 2002) (voiding an arbitration award for limiting a company's termination powers with a made-up term: "mitigating circumstances").

\* \* \* \* \*

An arbitration award does not "draw[] its essence" from a CBA where, as here, an arbitrator not only fails to heed the plain language of the agreement but also exceeds his authority by injecting language into it that was already rejected in prior bargaining. The bar may be low to uphold an arbitration award, but it still exists. As we are not an amen corner for arbitrators' rulings, we affirm the well-reasoned decision of the District Court vacating the arbitrator's decision and award.

11