**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

PAUL A. FIORAVANTI, JR.
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: April 8, 2022
Date Decided: July 6, 2022

Neal C. Belgam, Esquire
Robert K. Beste, Esquire
Smith, Katzenstein & Jenkins LLP
1000 West Street, Suite 1501
Wilmington, DE 19801

A. Thompson Bayliss, Esquire
April M. Kirby, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

RE:  *Polychain Capital LP et al. v. Pantera Venture Fund II LP et al.*,
C.A. No. 2021-0670-PAF

Dear Counsel:

This letter opinion resolves the parties' cross-motions for summary judgment over whether to vacate or confirm a May 10, 2021 arbitration award. As explained below, the petitioners' motion for summary judgment is denied, the respondents' cross-motion for summary judgment is granted, and the arbitration award is confirmed.

## I.   FACTUAL BACKGROUND

### A.   The Parties and Their Agreement to Arbitrate

Petitioner Polychain Capital LP ("Polychain Capital" and formerly known as "Polychain Capital LLC") is a Delaware limited partnership. Polychain Capital is an investment management entity in the cryptocurrency space, founded in 2016 by

petitioner Olaf Carlson-Wee. The other petitioners[1] are entities related to Carlson-Wee, which the petitioners themselves refer to as "Polychain." The court also refers to them collectively, with Polychain Capital and Carlson-Wee, as "Petitioners" or "Polychain."

Respondent Pantera Venture Fund II LP ("Pantera Fund") acquired a 5% membership interest in Polychain Capital in 2017. Respondent Pantera Capital Management LP (together with Pantera Fund, "Pantera"), is Pantera Fund's investment manager. Pantera is a hedge fund that focuses on cryptocurrencies.

Polychain Capital's operative governing document for purposes of this action is the First Amended and Restated Limited Liability Company Agreement (the "LLC Agreement").[2] Section 13.5 of the LLC Agreement contains an arbitration provision (the "Arbitration Provision") which requires that "[a]ny dispute, claim or controversy arising out of or relating to" the LLC Agreement be arbitrated under the

---

[1] Polychain Meta LLC, Polychain Partners LLC, Polychain VC LP, Polychain Venture Partners LLC, Polychain Ventures LP, Polychain Crypto Laboratory LLC, Polychain Fund II LP, Polychain Opportunities Fund I LLC, Polychain Partners II LLC, Polychain Consulting LLC, and Polychain Ventures II LP.

[2] Dkt. 39, Ex. 3 to Declaration of April Kirby ("LLC Agreement"). The LLC Agreement was later amended, *id.*, Ex. 4 to Declaration of April Kirby, and later converted into a limited partnership agreement when Polychain Capital converted into a limited partnership in January 2018. *Id.*, Ex. 5 to Declaration of April Kirby. The parties have briefed their motions with reference to the First Amended and Restated Limited Liability Company Agreement, and the court refers to that agreement herein.

auspices of the Judicial Arbitration and Mediation Services ("JAMS") pursuant to its "Comprehensive Arbitration Rules and Procedures."[3]

## B. Pantera Commences Arbitration

On August 2, 2018, Pantera commenced an arbitration proceeding against Polychain Capital, Carlson-Wee, and other Polychain entities and individuals.[4] Pantera asserted four direct claims relating to amendments to the LLC Agreement. Pantera alleged that Polychain had improperly adopted the amendments in an effort to terminate Pantera Fund's membership interest in Polychain.[5] Pantera also asserted four derivative claims on behalf of Polychain Capital against Carlson-Wee.[6] One of these claims alleged that Carlson-Wee had breached his fiduciary duties by diverting corporate opportunities of Polychain Capital to Polychain VC LP ("Polychain VC"), a new investment manager that Carlson-Wee had created "to advise venture funds investing in the same cryptocurrency space in which [Polychain Capital] operates."[7] Polychain asserted three counterclaims against Pantera.[8]

---

[3] LLC Agreement § 13.5.

[4] Dkt. 41, Ex. 8 to Declaration of April Kirby (Arbitration Demand).

[5] *Id.* ¶¶ 130–48.

[6] *Id.* ¶¶ 149–78.

[7] *Id.* ¶ 6; *see also id.* ¶¶ 153–62.

[8] Dkt. 39, Ex. 1 to Declaration of April Kirby, Ex. A ("First Interim Award") at 4.

The Arbitration Provision requires that the arbitrator be "experienced in dispute resolution regarding the securities industry."[9] The parties mutually selected the Honorable Jay C. Gandhi (Ret.) to serve as the arbitrator (the "Arbitrator"). The Arbitrator previously had served as a United States Magistrate Judge for the Central District of California. Before that, he was a litigation partner at Paul Hastings LLP, focusing on complex commercial disputes, multidistrict litigation, and class actions.[10]

The parties engaged in discovery, including document production, depositions, and expert discovery. Following discovery, the Arbitrator held a five-day arbitration hearing from September 9 through September 13, 2019 (the "Hearing").[11] Six witnesses testified in person, and each side presented its own expert witness opinion.[12] After the Hearing, the parties exchanged post-trial briefing, totaling 175 pages.[13] On December 12, 2019, the parties convened again for summations, which lasted seven hours.[14]

---

[9] LLC Agreement § 13.5.

[10] Dkt. 41, Ex. 9 to Declaration of April Kirby (Arbitrator's JAMS biography).

[11] First Interim Award at 3–5.

[12] *Id.* at 5.

[13] Dkt. 38, Declaration of Michael E. Swartz ("Swartz Decl.") ¶ 5.

[14] First Interim Award at 6; Swartz Decl. ¶ 6.

### C.    The Arbitrator's Decisions

On February 12, 2020, The Arbitrator issued a 54-page Interim Award No. 1, which resolved all remaining liability issues (the "First Interim Award"). Specifically, the Arbitrator ruled in Pantera's favor on three derivative claims against Carlson-Wee and others:   (1) breach of fiduciary duty for usurping corporate opportunities and misappropriating intellectual property, (2) aiding and abetting Carlson-Wee's breach of fiduciary duty, and (3) breach of contract for misappropriating intellectual property.[15]  With respect to the corporate opportunity claim that is a focus of this action, the Arbitrator wrote:

> At bottom, the equity investments in the funds managed by [Polychain VC] were within [Polychain Capital's] line of business.  The collective evidence also establishes that [Polychain Capital] had an interest or expectation in those investments when they arose during and after the summer of 2017 and was more than capable of taking advantage of the opportunities to invest in equity.  [Polychain Capital] *was* Polychain until Carlson-Wee funneled the venture business to [Polychain VC].[16]

The Arbitrator ruled that, under the corporate opportunity doctrine, Polychain Capital "is entitled to any pooled investment vehicles launched under the Polychain enterprise that fall within the same line of business."[17]

---

[15] First Interim Award at 6–44, 46, 54.

[16] *Id.* at 38.

[17] *Id.*

On September 4, 2020, the Arbitrator issued Interim Award No. 2, awarding Pantera $5,208,702.70 for fees and expenses that Pantera had incurred both as the prevailing party and as a successful derivative plaintiff (the "Second Interim Award," and with the First Interim Award, the "Interim Awards").[18] In addition, he awarded Pantera's counsel a fee enhancement of $340,516.45 under the corporate benefit doctrine the ("Fee Enhancement") so that Pantera's counsel would recoup a 10% discount that it had applied to the fees it charged Pantera after the expense of the Arbitration substantially exceeded initial estimates.[19] The total amount of fees and expenses awarded to Pantera's counsel was $5,549,219.15.[20]

The final phase of the proceedings addressed the form that the final arbitration award (the "Final Award") would take. Polychain argued for an entity-level recovery to Polychain Capital.[21] Pantera argued in favor of a pro rata direct recovery to the individual investors in Polychain Capital.[22] Over a period of months, the parties engaged in extensive letter briefing over the form of the Final Award.[23] On

---

[18] Dkt. 39, Ex. 1 to Declaration of April Kirby, Ex. B ("Second Interim Award") at 19.

[19] *Id.* at 15–18.

[20] *Id.* at 19.

[21] Dkt. 41, Ex. 12 to Declaration of April Kirby (Polychain Sept. 25, 2020 letter).

[22] Dkt. 41, Ex. 21 to Declaration of April Kirby (Pantera Mar. 8, 2021 letter).

[23] *See* Dkt. 41, Exs. 10–31 to Declaration of April Kirby.

March 11 and April 19, 2021, the Arbitrator held video hearings on the form of the Final Award, during which he issued oral rulings and directed the parties to confer on a form of Final Award that included an entity-level recovery.[24] The parties submitted their proposed form of the Final Award on May 7, 2021, which provided for an entity-level recovery.[25] The Arbitrator entered the Final Award on May 10, 2021.[26] The Interim Awards were incorporated by reference and attached as exhibits to the Final Award.

### D. The Post-Arbitration Dispute Moves to this Court

On July 30, 2021, Polychain filed a Verified Petition to Vacate Arbitration Award in Part in this court.[27] On August 9, 2021, Polychain filed a Motion to Vacate Arbitration Award and for Summary Judgment on Petition to Vacate Arbitration Award.[28] On September 20, 2021, Pantera, together with other affiliated entities ("Respondents"), filed an Answer to Verified Petition to Vacate Arbitration Award

---

[24] Dkt. 41, Exs. 22 (Notice of Hearing), 28 (Notice of Hearing) to Declaration of April Kirby; Swartz Decl. ¶ 7.

[25] Dkt. 41, Ex. 30 to Declaration of April Kirby; Dkt. 38, Declaration of April Kirby ¶ 32.

[26] Dkt. 41, Ex. 7 to Declaration of April Kirby (JAMS Docket); *see* Dkt. 39, Ex. 1 to Declaration of April Kirby (Final Award).

[27] Dkt. 1.

[28] Dkt. 7.

in Part and Verified Counterclaim to Confirm Arbitration Award.[29]  On November 18, 2021, Respondents filed their Motion to Confirm Arbitration Award and for Summary Judgment.[30]

Following full briefing, the court held argument on the motions on March 8, 2022 and received a supplemental submission from Respondents' counsel on April 8, 2022, providing additional information in response to an inquiry of the court.  The court considered the matter fully submitted on April 8, 2022.

## II.    ANALYSIS

### A.    Standard of Review

The filing of cross motions for summary judgment is the "common [method] for this court to determine whether to vacate or confirm an arbitration award." *Beebe Med. Ctr., Inc. v. InSight Health Servs. Corp.*, 751 A.2d 426, 431 (Del. Ch. 1999). Under Court of Chancery Rule 56, summary judgment will be granted if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *Zurich Am. Ins. Co. v. St. Paul Surplus Lines, Inc.*, 2009 WL 4895120, at *4 (Del. Ch. Dec. 10, 2009).  Where, as here, the

---

[29] Dkt. 21.  Besides for Pantera, Respondents also include Pantera Advisors LLC, Pantera GP LLC, Pantera ICO Fund LP, Pantera ICO Fund II LP, Dan Morehead, and Paul Veradittakit.

[30] Dkt. 38.

parties file cross motions for summary judgment and do not argue that there is any issue of material fact to the disposition of either motion, the court shall deem the motions to be the equivalent of a stipulation for a decision on the merits based on the record submitted with the motions. Ct. Ch. R. 56(h); *Zurich*, 2009 WL 4895120, at *4.

The parties agree that the Final Award is governed by the terms of the Federal Arbitration Act ("FAA"). The FAA provides four specific grounds upon which an award may be vacated. 9 U.S.C. § 10(a). As the Delaware Supreme Court has observed:

> A court's review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence. Limited circumstances warrant vacatur of an arbitration award. Section 10 of the FAA . . . allows vacatur of an arbitration award only in the case of arbitral misconduct: corruption, fraud, evident partiality, misconduct, misbehavior, and exceed[ing] . . . powers.

*Auto Equity Loans of Del., LLC v. Baird*, 232 A.3d 1293 (Del. 2020) (TABLE) (quotations and citations omitted).

When considering an application to vacate an arbitration award, the court shall not pass on the merits of the dispute submitted to the arbitrator. The role of the court is confined to determining whether one of the specific statutory grounds for vacating the award exists. To convince a court to vacate an award, the movant must show

"something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *TD Ameritrade, Inc. v. McLaughlin, Piven, Vogel Sec., Inc.*, 953 A.2d 726, 732–33 (Del. Ch. 2008) (internal quotations omitted); *accord Agspring, LLC v. NGP X US Hldgs., L.P.*, 2022 WL 170068, at *3 (Del. Ch. Jan. 19, 2022). If the motion to vacate is denied, the court must confirm the award. *See* 9 U.S.C. § 9 ("the court must grant [an application to confirm the award] unless the award is vacated, modified, or corrected").

Polychain seeks to vacate the Final Award under Section 10(a)(4) of the FAA, which permits vacating an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The court starts with the "presumption that the arbitrat[or] . . . acted within the scope of its authority" and "must resolve all doubts in favor of the arbitrator." *TD Ameritrade*, 953 A.2d at 732 (internal quotations omitted); *accord Carl Zeiss Vision, Inc. v. Refac Hldgs., Inc.*, 2017 WL 3635568, at *5 (Del. Ch. Aug. 24, 2017). Demonstrating that an arbitrator exceeded his authority is a steep hill to climb; indeed, as this court has stated, it is a "nearly vertical mountain." *Carl Zeiss*, 2017 WL 3635568, at *1; *accord Auto Equity Loans*, 232 A.3d at 1293 & n.26.

Delaware courts will vacate an award due to an arbitrator exceeding his authority only "where the arbitrator acts in manifest disregard of the law . . . meaning the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *SPX Corp. v. Garda USA, Inc.*, 94 A.3d 745, 750 (Del. 2014) (internal quotations omitted). Polychain contends that the Arbitrator exceeded his powers in three separate ways: (1) the Arbitrator's decision on the corporate opportunity claim did not "draw its essence" from the LLC Agreement; (2) Pantera was an inadequate derivative plaintiff; and (3) the Arbitrator exceeded his authority by including findings of fact and conclusions of law, which the LLC Agreement prohibited.

## B.    The Corporate Opportunity Claim

Polychain argues the Arbitrator's decision that Carlson-Wee breached his fiduciary duties by diverting corporate opportunities from Polychain Capital exceeded the scope of the Arbitrator's authority under Section 10(a)(4) of the FAA. Polychain presents its challenge to the Arbitrator's decision on the corporate opportunity claim solely as a question involving contract construction. Specifically, Polychain contends the Arbitrator impermissibly rewrote the LLC Agreement in

finding liability on the corporate opportunity claim.[31]  Respondents contend that the issue is not one of contract interpretation, but rather a fact-intensive, common law fiduciary duty claim.  Even viewing the issue as one of contract interpretation, Polychain has not satisfied its burden.

When parties submit questions of contract interpretation to an arbitrator, a reviewing court considering a motion to vacate "is confined to ascertaining whether the award draws its essence from the contract."  *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 30 (1987).  In that circumstance, the only question for this court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong."  *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

Citing Delaware law, the Arbitrator acknowledged that "[w]hether or not a corporate opportunity has been usurped 'is a factual question to be decided by reasonable inference from *objective* facts.'"  First Interim Award at 33 (emphasis in original) (quoting *Grove v. Brown*, 2013 WL 4041495, at *8 (Del. Ch. Aug. 8, 2013) (internal quotations omitted)).  As to this particular case, the Arbitrator observed that "the corporate opportunity analysis is so intensely factual, there are no cases cited

---

[31] Dkt. 34 ("Pets.' Op. Br.") at 26–42.

that are directly on point."[32]  Polychain argued that the LLC Agreement reflected the parties' intent that Polychain Capital did not have a right (or interest or expectancy) in future funds.[33]  As a threshold matter, the Arbitrator determined, and Polychain admits, that the LLC Agreement neither disclaims corporate opportunities nor eliminates fiduciary duties.[34]  The Arbitrator then considered Polychain's arguments and concluded that they were not persuasive.[35]

Polychain contends that the Final Award can and should be vacated because the arbitrator's ruling did not "draw its essence" from the LLC Agreement, but,

---

[32] First Interim Award at 31.

[33] *Id.* at 33–35.

[34] *Id.* at 27, 33–35; Dkt. 63 ("Hrg.") at 11:18–23 ("THE COURT:  Does the LLC agreement disclaim the corporate opportunity doctrine?  ATTORNEY LEVINE:  Your Honor, it does not. . . .  Nor have we ever argued that the fiduciary duties were disclaimed.").

[35] Polychain denies that it is seeking plenary review of the Arbitrator's determination on the corporate opportunity claim, but its submissions to this court belie that assertion.  Its opening brief resembles a post-trial brief.  *See, e.g.*, Pets.' Op. Br. 30 (arguing about what Carlson-Wee and Polychain's largest outside investor "intended or believed" concerning the meaning of the LLC Agreement); *id.* (arguing that Polychain presented "[u]ncontroverted evidence at the hearing" about industry practice); *id.* at 36 (arguing that "[e]xtrinsic evidence regarding the parties' agreement confirms that there is no basis for finding that Polychain Capital had an interest in future funds"); *id.* at 38 ("Pantera's only evidence that it had expected fees on future funds was the self-serving testimony of its principals.").  Polychain also submitted 34 exhibits with its opening brief in support of its motion for summary judgment.  *See* Dkt. 32.  Many of those exhibits are emails that were submitted as evidentiary exhibits in the arbitration; they also include witness testimony, either during the arbitration proceeding or via deposition.  This court does not sit as an appellate court reviewing an arbitrator's decision.  *World-Win Mktg., Inc. v. Ganley Mgmt. Co.*, 2009 WL 2534874, at *2 (Del. Ch. Aug. 18, 2009).

instead, is premised upon the Arbitrator's modification of the agreement.[36]

Polychain primarily cites decisions seeking to vacate arbitration awards involving

the construction and application of labor contracts.[37]  It relies most heavily upon

*Monongahela Valley Hospital Inc. v. United Steel Paper & Forestry Rubber*

*Manufacturing Allied Industrial & Service Workers International Union AFL-CIO*,

946 F.3d 195 (3d Cir. 2019).  A discussion of that decision demonstrates that it is

inapplicable to this case.

    *Monongahela* involved the interpretation of a vacation time policy contained

in a collective bargaining agreement between a hospital and union member

employees.  946 F.3d at 197.  Specifically, the policy provided:  "[v]acation will, so

far as possible, be granted at times most desired by employees; but the final right to

allow vacation periods, and the right to change vacation periods[,] is exclusively

reserved to the Hospital."  *Id.* (alteration in original).  Arbitration ensued after the

hospital denied a union member employee her requested vacation time.  *Id.* at 198.

The arbitrator found in favor of the employee, ruling that "notwithstanding the

Hospital's reservation of exclusive rights," the policy precluded the hospital from

---

[36] Pets.' Op. Br. 26 (quoting *PMA Cap. Ins. Co. v. Platinum Underwriters Bermuda, Ltd.*, 659 F. Supp. 2d 631, 637 (E.D. Pa. 2009), *aff'd*, 400 F. App'x 654 (3d Cir. 2010)).

[37] *Id.* at 33–35.

denying senior employees in the bargaining unit their desired vacation absent an "operating need." *Id.* The district court vacated the award for "manifest disregard" of the collective bargaining agreement's plain language and the clear intent of the parties. *Id.* at 199. The Third Circuit affirmed, holding that the arbitrator exceeded his authority by "inserting the 'operating need' restriction." *Id.* at 200–01.

Unlike in *Monongahela*, the Arbitrator here did not ignore the express language of the LLC Agreement and insert a term that effectively rewrote the agreement. The Arbitrator decided a common law breach of fiduciary duty claim for usurpation of a corporate opportunity. The LLC Agreement neither waived the corporate opportunity doctrine nor eliminated fiduciary duties. The Arbitrator considered, but was not persuaded by, Polychain's argument that the provisions of the LLC Agreement and other evidence showed that Polychain Capital did not have an expectancy or interest in the corporate opportunity derived from the creation of future funds. The LLC Agreement does not expressly state that Polychain Capital did not have any expectancy or interest in managing other funds. The Arbitrator reasoned: "The lack of express language referencing interests in 'future funds' does not necessarily negate [Polychain] Capital's right" to an interest in future funds.[38]

---

[38] First Interim Award at 35. In support of its position, Pantera pointed to language in the LLC Agreement stating that Polychain Capital "primarily intends to provide investment

But even as the Arbitrator acknowledged, that was "not the end of the analysis."[39]

The Arbitrator then reasoned that Pantera had established its corporate opportunity claim.

It is not this court's role on a motion to vacate to second-guess the Arbitrator's weighing of facts or even his interpretation of contract language in assessing a fact-intensive, common law fiduciary duty claim. The only question for this court "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans*, 569 U.S. at 569. In considering whether the arbitrator exceeded its authority, "the Court must resolve all doubts in favor of the arbitrator." *TD Ameritrade*, 953 A.2d 732 (internal quotations omitted). Here, the court harbors no doubt that the Arbitrator's decision on the corporate opportunity claim was well within the scope of his authority. Accordingly, the application to vacate the decision on the corporate opportunity claim is denied.

---

management services and to act as an investment manager *to one or more pooled investment vehicles . . . including but not limited to Polychain Fund I LP*." LLC Agreement § 1.2 (emphasis added).

[39] First Interim Award at 35.

### C.   Pantera's Qualification as a Derivative Plaintiff

Polychain also seeks to vacate the Final Award on the corporate opportunity claim on the ground that the Arbitrator exceeded his authority by failing to disqualify Pantera as a derivative plaintiff.  This argument is, admittedly, somewhat difficult to follow.  As the court understands Polychain's argument, Pantera should have been disqualified as a derivative plaintiff because, in the parties' competing proposals over the form of the Final Award, Pantera sought individual relief, rather than relief to the entity.  As noted above, however, the Arbitrator ultimately awarded an entity-level recovery on the corporate opportunity claim, not the investor-level recovery that Pantera had initially proposed.

Polychain presented the disqualification issue to the Arbitrator, and he rejected Polychain's arguments.[40]  Polychain argues that the Arbitrator exceeded his

---

[40] *See* Dkt. 41, Ex. 19 to Declaration of April Kirby at 15 (Jan. 22, 2021 letter from Polychain's counsel to the Arbitrator:  "In light of Pantera's post-Interim Award efforts to fundamentally change the scope of its claims and the nature of the relief it seeks from derivative to direct, it would be entirely appropriate for the Arbitrator to exercise the discretion granted under JAMS Rules 24(c) to reconsider not only the merits of the Interim Award but Pantera's adequacy as a representative of the interests of the investors in Polychain Capital.");  Dkt. 32, Declaration of Andrew Levine, Ex. 31 at 3 (March 3, 2021 letter from Polychain's counsel to the Arbitrator:  "[The Arbitrator] should reject Pantera's bid to gain personal advantage at Polychain's expense, which calls into doubt whether Pantera has been an appropriate advocate on the Company's behalf and should be allowed to continue as a derivative plaintiff.");  Hrg. 103:15–17 (Petitioners' counsel advising this court that Polychain "extensively briefed the adequacy issue.  And I believe that Judge Gandhi considered it and ruled on it and rejected it.");  Swartz Decl. ¶ 8 ("During the March

authority because Pantera sought individual relief and was antagonistic to Polychain Capital. Polychain cannot satisfy its burden under Section 10(a)(4) of the FAA. In considering an application to vacate an award on the grounds that the arbitrator exceeded its authority, it is not enough to show merely that the arbitrator committed legal error. The court "may not review the merits of [an arbitration] award," even in the case of serious legal error. *Verizon Pa., LLC v. Commc'ns Workers of Am., AFL-CIO, Local 13000*, 13 F.4th 300, 306 (3d Cir. 2021); *see Oxford Health Plans*, 569 U.S. at 569 ("It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error."). Even if the arbitrator erred in his interpretation of the case law on the qualification of a derivative plaintiff, the result would not change because "[e]xceeding one's powers . . . is not synonymous with making a mistake." *Ross Dress for Less Inc. v. VIWP, L.P.*, 750 F. App'x 141, 144 (3d Cir. 2018). "Factual or legal errors, without more, are not sufficient bases to vacate an arbitration award." *Blank Rome, LLP v. Vendel*, 2003 WL 21801179, at *7 (Del. Ch. Aug. 5, 2003).

---

11, 2021 hearing, Judge Gandhi . . . rejected Polychain's request that Pantera be disqualified as a derivative plaintiff."). The parties have advised that there was no transcript of the March 11, 2021 hearing before the Arbitrator. Dkt. 64 at 3.

Polychain points to *Smollar v. Potarazu*, 2016 WL 3635304 (Del. Ch. June 29, 2016), as support for vacating the Final Award due to the Arbitrator's refusal to disqualify Pantera. In *Smollar*, the court rejected a derivative settlement because the representative plaintiff executed a settlement agreement that provided for him to receive a personal financial benefit not available to other stockholders—*i.e.*, the company's purchase of the plaintiff's stock at the price he paid for it fifteen years earlier. Thereafter, other stockholders moved to disqualify the plaintiff and his counsel for lack of standing. The court granted the motion because the plaintiff sought court approval of a settlement that provided him with a substantial personal benefit and because the plaintiff "stated his intention, notwithstanding the Court's rejection of the proposed Settlement Agreement, to forego any further prosecution of the action." *Id.* at *3.

*Smollar* arose in an entirely different context and will not carry the burden that Polychain asks it to bear here. First, *Smollar* involved a proposed settlement subject to court approval, not review of an arbitration award or a judgment entered by a court. Second, *Smollar* was a purely derivative action where the representative plaintiff sought a personal benefit in the settlement which was not available to other stockholders. Here, by contrast, Pantera asserted both derivative and individual claims and sought relief for both. Beyond that, the proposed derivative relief for the

corporate opportunity claim was a pro-rata investor-level recovery, not solely a personal benefit for Pantera.[41] Third, unlike in *Smollar*, Pantera did not forgo any further prosecution of the action after Polychain objected to Pantera's form of the Final Award. Fourth, Polychain does not take issue with the actual relief awarded for the corporate opportunity claim.

Polychain next argues that the Arbitrator's decision that awarded Pantera a "fee enhancement" of $340,516.45 above the amount billed by its lawyers was irrational and must be vacated.[42] Pantera's counsel charged a reduced rate to accept the representation. Pantera sought, and the Arbitrator awarded, the fee enhancement based upon the benefits conferred upon Polychain Capital. The Second Interim Award acknowledged that benefit, which "logically results in an increase in the valuation of [Polychain] Capital, as the fees generated from the funds at issue now flow back to [Polychain] Capital."[43] It is well-settled that a plaintiff is entitled to

---

[41] "[S]ubstantial authority supports a court's ability to grant a *pro rata* recovery on a derivative claim. Such a recovery is the exception, not the rule, but it is possible." *In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 132 A.3d 67, 75 (Del. Ch. 2015), *rev'd on other grounds sub nom. El Paso Pipeline GP Co., LLC v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016); *see also In re Happy Child World, Inc.*, 2020 WL 5793156, at *2 (Del. Ch. Sept. 29, 2020) ("As a court of equity, this Court, I believe, would be within its authority to fashion [a direct recovery for a derivative claim] if it did so with care.").

[42] Pets.' Op. Br. 53–54.

[43] Second Interim Award at 15.

recover attorneys' fees for a corporate benefit in derivative litigation. *Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del. 1966).

Polychain does not contend that the Arbitrator lacked the authority to award fees or to award a fee enhancement. Instead, Polychain argues that Pantera should not have been provided a fee enhancement because it first "urge[d] the Arbitrator to award Pantera a direct reward and thereby deny Polychain Capital any benefit on that claim and prevent any fees from flow[ing] back to [Polychain] Capital, while simultaneously requesting that the Award grant Pantera unique extra-contractual information rights it could use to unfairly compete with Polychain."[44] This misses the point. As discussed above, Pantera initially sought an investor-level recovery as relief for Carlson-Wee's usurpation of corporate opportunities. Even then, a fee-enhancement would have been permitted based on a common fund benefit. At bottom, Polychain's argument on this point is merely a slight twist on its previously rejected argument that the Arbitrator exceeded his authority by not disqualifying Pantera as a derivative plaintiff. Polychain has not satisfied its high burden under Section 10(a)(4) of the FAA. The FAA does not provide for a "general review for an arbitrator's legal errors." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576,

---

[44] Pets.' Op. Br. 53–54 (internal quotations and emphasis omitted).

585 (2008); *accord TD Ameritrade*, 953 A.2d at 731. Awarding the fee enhancement was well within the Arbitrator's authority and was hardly irrational. Accordingly, the challenge to the fee enhancement fails.

### D. The Form of the Final Award

Polychain's final challenge concerns the form of the Arbitrator's Final Award. Polychain points to Section 13.5 of the LLC Agreement, which provides that "[t]he arbitration award will not include factual findings or conclusions of law."[45] Polychain argues that the Arbitrator's 54-page First Interim Award contained detailed factual findings and conclusions of law, which violated this contractual limitation on the Arbitrator's authority.[46] The Interim Awards were incorporated by reference into and made part of the May 10, 2021 Final Award.

According to Polychain, any portion of the Final Award that contains findings and conclusions should not exist.[47] This portion of Polychain's challenge to the Final Award does not seek to undo any of the relief that the Arbitrator awarded. Instead, Polychain seeks an order requiring that large portions of the Final Award and most all of the Interim Awards that are attached thereto be excised. Polychain

---

[45] LLC Agreement § 13.5.

[46] The Second Interim Award was 19 pages in length.

[47] *See* Pets.' Op. Br. 61–62.

insists that it is entitled to this relief because the LLC Agreement's Arbitration Provision reflects the parties' express intention to maintain the confidential nature of their relationship and any disputes between them.

This issue was hotly litigated before the Arbitrator, and he expressly addressed it in his April 20, 2020 Ruling, rejecting Polychain's arguments. In his ruling on Polychain's motion to correct the First Interim Award, the Arbitrator took issue with the assertion that his award contained findings of fact and conclusions of law in violation of the LLC Agreement.[48] The Arbitrator, a former litigation partner at a national law firm and retired federal Magistrate Judge, offered several reasons for his decision.

First, the Arbitrator explained that the Arbitration Provision incorporated the JAMS Comprehensive Arbitration Rules and Procedures, which instructs that "'[u]nless all Parties agree otherwise, the Award shall also contain a concise written statement of the reasons for the Award.'"[49] The Arbitrator cited JAMS guidance for the understanding that there are three types of arbitration awards: (1) bare, (2)

---

[48] Dkt. 18, Ex. A at 2–3.

[49] *Id.* at 2 (quoting JAMS Comprehensive Arbitration Rules and Procedures Rule 24(h)).

reasoned, and (3) findings of fact and conclusions of law.[50] Polychain counters with authority stating that "[a] 'reasoned award' means that findings of fact and conclusions of law supporting the ultimate award rendered are stated in the award or in a supporting memorandum." 21 Williston on Contracts § 57:116 (4th ed.); *see also Dunhill Franchisees Tr. v. Dunhill Staffing Sys., Inc.*, 513 F. Supp. 2d 23, 27 (S.D.N.Y. 2007) (equating a "'reasoned' award" with "a formal articulation of the Arbitrator's findings of fact, conclusions of law, or reasons for his determination").[51]

The Arbitrator considered Polychain to be asserting that the LLC Agreement only provided for a bare award, which he dismissed as inconsistent with the JAMS Rules that were incorporated into the Arbitration Provision. The Arbitrator determined that he was entitled to issue a reasoned award, and the LLC Agreement did not preclude him from providing rationales and explanations for his rulings.[52]

The Arbitrator's determination finds support in the case law cited by Polychain:

> Logically, the varying forms of awards may be considered along a spectrum of increasingly reasoned awards, with a standard award requiring the least explanation and findings of fact and conclusions of

---

[50] *Id.* at 3 (citing Hon. David Huebner (Ret.) & Richard Chernick, JAMS Los Angeles, Making Arbitration Work: Best Practices, Nov. 13, 2019).

[51] Pets.' Op. Br. 60.

[52] Dkt. 18, Ex. A at 2–3.

> law requiring the most. In this light, therefore, a reasoned award is something short of findings and conclusions but more than a simple result.

*Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) (quoting *Sarofim v. Tr. Co. of the W.*, 440 F.3d 213, 215 n.1 (5th Cir.2006)) (internal quotations and citations omitted). *Cat Charter* went on to explain that "[s]trictly speaking, then, a 'reasoned' award is an award that is provided with or marked by the detailed listing *or mention of* expressions or statements offered as a justification of an act—the 'act' here being, of course, the decision of the Panel." *Id.*; *see also Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua-College of Med.*, 826 F.3d 634, 640 (2d Cir. 2016) (observing that a "reasoned award sets forth the basic reasoning of the arbitral panel on the central issue or issues raised before it"). The issue in *Cat Charter* was the opposite of what is being argued here. In that case, the arbitration panel's award was being challenged for containing too little information to be considered a "reasoned award." The appeals court, reversing the trial court, held that it did.

Polychain cites only one case where an arbitrator was held to have exceeded his authority for issuing an award that contained more detail than what the parties had bargained for. In *Allstate Insurance Co. v Superior Court*, 48 Cal. Rptr. 3d 266 (Cal. Ct. App. 2006), the parties' agreement provided: "The decision of the

arbitrator . . . shall be issued without a written opinion other than to indicate which party prevailed and how much, if anything, Allstate shall pay to [the insured]." *Id.* at 268. The arbitrator was not apprised of this language until after he had issued a five-page ruling that spelled out his reasoning in detail. The arbitrator subsequently told the parties that, if a court were to rule that the arbitrator could modify his ruling, he would withdraw the ruling and issue a revised ruling. *Id.* at 269. The trial court vacated the arbitrator's ruling on the grounds that he had not resolved all issues. On appeal, the California Court of Appeal directed the trial court to vacate its order vacating the arbitration award and to correct the arbitration award by deleting the introduction and discussion of the award, leaving only the conclusion containing the amount of the award. *Id.* at 271.

All of the other cases upon which Polychain relies involve challenges to the arbitrator's form of award for having *insufficient* detail, not too much. *See, e.g.*, *W. Emp'rs Ins. Co. v. Jefferies & Co., Inc.*, 958 F.2d 258, 260 (9th Cir. 1992) (vacating award because it failed to contain findings of fact and conclusions of law); *Cat Charter*, 646 F.3d at 842, 846 (reversing trial court's decision that the arbitrators had

exceeded their authority for having failed to provide a satisfactorily reasoned award).[53]

Unlike in *Allstate*, the Arbitration Provision did not expressly limit the form of award to an identification of the prevailing party and the amount of the award. There was room for interpretation as to whether it permitted a reasoned award under the JAMS Rules. Under JAMS Rule 11(a): "Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing. The resolution of the issue by the Arbitrator shall be final." JAMS Rule 11(a). The Arbitrator's interpretation and application of the JAMS Rules are entitled to deference upon review of an award. *See Berland v. Conclave, LLC*, 2021 WL 461727, at *7 (S.D. Cal. Feb. 9. 2021) ("The Arbitrator's

---

[53] Polychain also contends that the Final Award must be significantly edited because of its potential precedential effect. Hrg. 106:21–107:11. That argument was not raised with the Arbitrator and was not raised in Polychain's opening brief. Therefore, it is waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."); *Winshall v. Viacom Int'l, Inc.*, 55 A.3d 629, 642 (Del. Ch. 2011) (ruling that an argument raised for the first time at a hearing was "not fairly or timely presented and was waived"), *aff'd*, 76 A.3d 808 (Del. 2013); *accord Hill v. LW Buyer, LLC*, 2019 WL 3492165, at *6 n.65 & *11 n.108 (Del. Ch. July 31, 2019). In any event, the argument is without merit. "It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions. Indeed, an arbitration award is not considered conclusive or binding in subsequent cases involving the same contract language but different incidents or grievances." *El Dorado Tech. Servs., Inc. v. Union Gen. De Trabajadores de P.R.*, 961 F.2d 317, 321 (1st Cir. 1992).

interpretation and application of the JAMS Rules is entitled to significant deference.").

The Arbitrator's reasoning on this issue was not limited solely to his interpretation of the Arbitration Provision and its interplay with the JAMS Rules. The Arbitrator also detailed how Polychain was well aware throughout the lengthy arbitration process that the Arbitrator would not be issuing a bare award. For example, the Arbitrator noted that he had issued reasoned decisions throughout the arbitration, containing the bases for his decisions, to which no party objected.[54] In addition, the Arbitrator specifically requested that the parties de-duplicate the exhibits "so that we're not citing two exhibits on the award."[55] The Arbitrator explained that he also told the parties that in preparation for deciding the First Interim Award, he did not want to refer to multiple exhibits and that he had reminded the parties that he wanted more than 30 days to draft the First Interim Award.[56] The Arbitrator noted:

> Neither party objected to the Arbitrator's requests. In fact, counsel for Polychain offered to create a correlation table of exhibits for cross-reference to assist the Arbitrator with the de-duplication process in drafting the award. It goes without saying that a "bare" award certainly

---

[54] Dkt. 18, Ex. A at 3.

[55] *Id.* (quoting the arbitration transcript).

[56] *Id.*

would not require the citation of multiple evidentiary exhibits or, for that matter, more than 30 days to complete.[57]

Although the Arbitrator did not use the terms "acquiescence" or "waiver," that is certainly the flavor of his reasoning.

The court also must consider Polychain's requested relief in the current context of the parties' dispute. At an earlier phase of this action, Polychain sought confidential treatment of the Final Award, including the Interim Awards attached thereto. Respondents challenged that application under Court of Chancery Rule 5.1. The court denied Polychain's application because Polychain over-designated large swaths of the Final Award, much of which did not satisfy the criteria for "confidential information" under Rule 5.1.[58]

In denying the motion for confidential treatment, the court expressly delayed implementation of its order for 10 days to allow Polychain the opportunity to seek an interlocutory appeal before the Final Award, including the Interim Awards,

---

[57] *Id.* Finally, the Arbitrator noted that the driving factor for Polychain's motion to correct the First Interim Award was to protect the confidentiality of the proceeding. The parties had stipulated to a protective order ensuring the confidentiality of sensitive information elicited through discovery. The Arbitrator also noted that while this order stated that the parties would "consider" whether an additional order governing the confidentiality of the arbitration hearing would be necessary, the parties never stipulated to such an order. *Id.*

[58] *See* Dkt. 47.

became public.[59]   Polychain did not seek an interlocutory appeal, and the Final Award, including the Interim Awards became public.   The Final Award and the Interim Awards have been publicly disclosed via the news media.[60]   Thus, even if the court were to grant the requested relief—excising the Arbitrator's reasoning from the Final Award, including the Interim Awards—the Arbitrator's reasoning for the Final Award would be unchanged, and it would be publicly available.   The court is hard-pressed to see how granting Polychain's requested relief on this issue would be anything more than, at best, a Pyrrhic victory.

Polychain has not established sufficient grounds to excise portions of the Final Award that contain the Arbitrator's reasoning and analysis.   The Arbitrator's decision on the appropriate form of award, which carefully considered the Arbitration Provision in the context of the incorporated JAMS Rules, is entitled to deference.   In addition, the court cannot conclude that the Arbitrator's decision on this issue, in the context of the parties' conduct during the entire arbitration, reflect that he exceeded his authority under Section 10(a)(4) of the FAA.   "[Q]uestionable

---

[59] *Id.* ¶ 16.

[60] *See, e.g.*, Allison Grande, *Chancery Won't Let Polychain's 'Sweeping' Redactions Stand*, LAW360 (Dec. 10, 2021), available at https://www.law360.com/articles/1447779/chancery-won-t-let-polychain-s-sweeping-redactions-stand.

legal support or a misreading of the law alone are insufficient to vacate an arbitration award." *Auto Equity Loans*, 232 A.3d at 1293. Accordingly, Polychain's application to vacate the form of the Final Award is denied.

This conclusion is consistent with the general review principles embodied in the FAA. The United States Supreme Court has read Sections 9 through 11 of the FAA:

> as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can render informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, and bring arbitration theory to grief in post-arbitration process.

*Cat Charter*, 646 F.3d at 845 (quoting *Hall St. Assocs.*, 552 U.S. at 588 (citations and internal quotation marks omitted)). In addition, any doubt as to whether the arbitrator exceeded his authority must be resolved in favor of the arbitrator. *TD Ameritrade*, 953 A.2d at 732; *accord Carl Zeiss*, 2017 WL 3635568, at *5–6.

Accordingly, Polychain's motion for summary judgment seeking to vacate the Final Award must be denied. Therefore, the court is obliged to grant Respondents' cross-motion for summary judgment to confirm the Final Award. 9 U.S.C. § 9.

### E.    Respondents' Fees and Expenses

As the prevailing party, Respondents seek an award of their fees and expenses in this action. The LLC Agreement provides that a prevailing party in any dispute under the agreement is entitled to an award of its fees and expenses.[61] Polychain does not dispute that the prevailing party in this action is entitled to its fees and expenses. Accordingly, Respondents are awarded their reasonable fees and expenses incurred in this action.

In addition, Respondents request pre- and post-judgment interest on the Final Award at the legal rate, compounded quarterly. Polychain did not contest Respondents' application for pre-judgment or post-judgment interest. In Delaware, pre-judgment interest is awarded at 5% over the federal discount rate. *See* 6 *Del. C.* § 2301(a). Interest is ordinarily compounded quarterly. *See Narayanan v. Sutherland Glob. Hldgs. Inc.*, 2016 WL 3682617, at *15 (Del. Ch. July 5, 2016) ("In Delaware, pre-judgment interest accrues at the legal rate set forth in 6 *Del. C.* § 2301(a) and is compounded quarterly."); *accord Giesecke+Devrient Mobile Sec. Am., Inc. v. Nxt-ID, Inc.*, 2021 WL 982597, at *12 (Del. Ch. Mar. 16, 2021). Respondents are entitled to post-judgment interest at the legal rate from the date of

---

[61] LLC Agreement § 13.5.

judgment, compounded quarterly. *See Noranda Aluminum Hldg. Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 979 (Del. 2021) ("Section 2301(a) unambiguously requires that post-judgment interest accrue at the legal rate that was in effect on the date of judgment.").

## III.  CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is DENIED.  Respondents' motion for summary judgment is GRANTED.  The Final Award is confirmed.  Respondents are awarded their reasonable attorneys' fees and expenses incurred in this action along with pre- and post-judgment interest on the Final Award at the legal rate, compounded quarterly.

Very truly yours,

*/s/ Paul A. Fioravanti, Jr.*

Vice Chancellor